IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | CR. No. C-12-13 |
| v. | § | (C.A. No. C-13-138) |
| | § | |
| ELEUTERIO BATEN-CALEL | § | |
| | § | |
| Defendant/Movant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Eleuterio Baten-Calel's (Baten-Calel) motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and memorandum in support. D.E. 42, 43.[1] The government responded to the motion and filed defense counsel's affidavit. D.E. 47, 51. No reply was filed.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Baten-Calel was arrested in December 2011 in Kenedy County, Texas when Border Patrol Agents found him on private ranch land near the Sarita, Texas Border Patrol Checkpoint. Baten-Calel was determined to be a citizen of Guatemala who had previously been removed from the United States. D.E. 1.

Baten-Calel was appointed counsel after his arrest. D.E. 4. He was indicted and charged with

---

[1] Docket entry numbers (D.E.) refer to the criminal case.

1

illegal reentry. D.E. 9.

In February 2012, Baten-Calel consented to rearraignment before a federal magistrate judge. D.E. 14, 15. He pled guilty without a plea agreement.

The Probation Department prepared the Presentence Investigation Report (PSR). D.E. 18. The base offense level for illegal reentry is 8. U.S.S.G. § 2L1.2(a). Id. at ¶ 11. Baten-Calel's 2009 conviction for manslaughter was considered to be a crime of violence, which increased his offense level by 16 points. Id. at ¶ 12. Baten-Calel's total offense level was calculated to be 21 after credit for acceptance of responsibility. Id. at ¶¶ 12-20. Baten-Calel had 7 criminal history points resulting in application of criminal history category IV. Id. at ¶¶ 21-28. The guideline range of imprisonment was calculated to be 57-71 months. Id. at ¶ 40. Counsel filed no objections to the PSR.

At sentencing, defense counsel argued that Baten-Calel's 16-level enhancement was a result of a drunk driving collision, he had no prior immigration offenses, and he came to the United States to work to feed his family after his family home had been destroyed by a flood. D.E. 34, pp. 3-4. The Court imposed a low-end guideline sentence of 57 months in the Bureau of Prisons, no supervised release, and a $100 special assessment. Id. at 6. Baten-Calel was advised of his right to appeal. Id.

Baten-Calel appealed. The Fifth Circuit Court of Appeals dismissed the appeal after permitting counsel to withdraw. D.E. 41. Baten-Calel timely filed the present motion. D.E. 42.

2

### III. MOVANT'S ALLEGATIONS

Baten-Calel raises the following claims: 1) a competency hearing should have been held in light of his "declaration that he suffered from a mental illness/disorder" and that his due process rights were violated when the court failed to order an examination and hearing before accepting his guilty plea; 2) ineffective assistance of counsel based upon counsel's failure to investigate his mental illness/ disorder and other mitigating factors for use at sentencing; and 3) the PSR should not have counted a conviction against him where the Probation Department could not determine whether he was represented by counsel.

The government argues that record does not support his claims.

### IV. ANALYSIS

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

**B.     Competency**

Baten-Calel claims that during his colloquy with the magistrate judge, he raised the issue of his competency such that the magistrate should have inquired further and ordered a competency

3

hearing. To evaluate whether a judge in the underlying proceedings should have inquired further as to a defendant's competency, the following issues should be considered:

> Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense. "While the Supreme Court has not articulated a general standard for the nature or quantum of evidence necessary to trigger a competency procedure, it has focused on three factors that should be considered: the existence of a history of irrational behavior, defendant's demeanor at trial, and a prior medical opinion."

Lokos v. Capps, 625 F.2d 1258, 1261-62 (5th Cir. 1980) (internal citations omitted); accord United States v. Moghaddam, 299 Fed. App'x 418, 420 (5th Cir. Nov. 17, 2008) (per curiam) (designated unpublished) (relying on same factors as in Lokos in post-conviction challenge to competency).

Baten-Calel claims that his responses to the magistrate judge during rearraignment should have put her on notice that he was mentally ill or incompetent.

> 10 THE COURT: Did you learn how to read and write in
> 11 Quiche' or in Spanish?
> 12 THE DEFENDANT: I did learn to and I went to school.
> 13 I learned to read but it is very little that I can read in the
> 14 books.
> 15 THE COURT: Ms. Babu, how have you been communicating
> 16 with your client?
> 17 MS. BABU: I've been speaking with him both in
> 18 Spanish and also using the Quiche' interpreter.
> 19 THE COURT: Have you been able to communicate with
> 20 your lawyer, Mr. Baten?
> 21 THE DEFENDANT: Yes. She has looked for an
> 22 interpreter and they were explaining it to me yesterday.
> 23 *THE COURT: Are you in good health?*
> 24 *THE DEFENDANT: The only thing is that sometimes my*
> 25 *back aches or my head aches.*
> 1 THE COURT: And do you feel all right this afternoon?
> 2 Do you feel like proceeding?
> 3 THE DEFENDANT: Yes, I can.
> 4 THE COURT: And, what kind of work do you do for a
> 5 living, sir?

4

> 6 THE DEFENDANT: I started working when I was eight
> 7 years old and when I was ten years old, I started working,
> 8 using shoes -- wearing shoes and ever since that time, I have
> 9 worked for what I need to eat.
> 10 THE COURT: But what kind of work have you done?
> 11 THE DEFENDANT: Well, I don't know what you would
> 12 call it here but what I use to do was that I would harvest the
> 13 coffee -- cut coffee and put it into stacks.
> 14 *THE COURT: Have you ever been admitted to a hospital*
> 15 *or seen by a doctor to treat a mental disorder, mental illness*
> 16 *or addiction to drugs or alcohol?*
> 17 *THE DEFENDANT: When I started to work, I got enough*
> 18 *money to get to go and see a doctor. And that doctor told me*
> 19 *that you have an illness. You have an illness in your head*
> 20 *that can affect your heart.*
> 21 *THE COURT: Do you suffer from any kind of depression*
> 22 *or other mental problems?*
> 23 *THE DEFENDANT: No. Right now, I am fine. What I*
> 24 *meant to say when I said that I had headaches is -- what I*
> 25 *meant was that when I was a child, I would be confined to bed*
> 1 *because the -- because of the great pain in my head.*
> 2 *THE COURT: But you haven't had that recently, as an*
> 3 *adult? That problem?*
> 4 *THE DEFENDANT: In 2003 or 2004, it did confine me to*
> 5 *bed again and I did go to the hospital but they gave me some*
> 6 *pills and now I just get that sometimes.*
> 7 THE COURT: And do you feel okay today?
> 8 THE DEFENDANT: Yes.

D.E. 32, pp. 4-6 (emphasis added).

During the remainder of the rearraignment, Baten-Calel continued to respond appropriately to the court's questions and testified he understood the charges against him, his right to remain silent and to have a trial, the process of sentencing, his maximum punishment, and that he would be deported if convicted. Baten-Calel testified that he pled guilty voluntarily and that he had not been threatened or promised leniency in exchange for his plea. He testified that his crime was "because I entered this country." Id., p. 15. He pled guilty and agreed with the government's factual recitation. Id., pp. 16-20. Baten-Calel offered explanations in addition to answering the magistrate judge's

5

questions.[2]

There is nothing in the plea colloquy, other than Baten-Calel's statement that he has had debilitating headaches in the past, to put the magistrate judge on notice of a problem. Additionally, the most recent debilitating headaches occurred 8 years before rearraignment. Baten-Calel did not provide any history of irrational behavior in this proceeding. His demeanor does not suggest that he had any difficulty understanding the proceedings, and there is no prior medical opinion to suggest a problem. Baten-Calel does not state that there is any other evidence to support a need to inquire further regarding competency.

The Court has also reviewed the electronic recordings of Baten Calel's previous appearances in federal court on December 14, 2011,[3] and January 23, 2012, and found no indication of any mental illness or disability on the part of Baten-Calel.

---

[2]
```
 3 THE COURT: And so after you were deported and before
 4 you came back into the United States, did you get permission of
 5 the Secretary of the Department of Homeland Security to come
 6 back into the country?
 7 THE DEFENDANT: Yes, it's true. They did deport me
 8 and I did return. But the thing is that I was only able to
 9 earn about 15 or 20 Quetzal a day and that's why I returned, to
10 look for work.
11 THE COURT: And did you get permission to return?
12 THE DEFENDANT: It's true I did not go to request any
13 document.
14 THE COURT: Did you come into the United States by
15 going through Mexico or how did you get here?
16 THE DEFENDANT: Yes. I did leave my country and I
17 went through Mexico. But, first I would like to tell you that
18 I was working in Chiapas, Mexico and that's how I got money to
19 continue going through Mexico.
```
Id., p. 19.

[3] At his initial hearing, Baten-Calel spoke forcefully that he had come to the United States to work to support his wife and children, that his home had been destroyed, his parents died when he was young, and he did not want to make trouble or harm anyone. ERO Dec. 14, 2011, 3:19:40-3:48:06.

Baten-Calel's first claim that the rearraignment provided evidence that should have caused the magistrate judge to order a competency hearing fails based upon this record, as there was nothing presented to the magistrate judge that should have put her on notice that a competency hearing was necessary.

### C. Claims of Ineffective Assistance of Counsel

*1. Standard for ineffective assistance of counsel*

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### 2. *Claim that counsel failed to adequately determine whether Baten-Calel was competent and failed to investigate mitigating facts for use at sentencing*

Baten-Calel also complains that counsel did not make appropriate inquiry to determine his competency. When the magistrate judge asked counsel whether Baten-Calel was competent, counsel replied that he was. Baten-Calel suggests that counsel should have been required to investigate his competency or seek a medical opinion to determine whether he was competent.

A person is considered competent in this context when he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether the defendant has a rational, as well as a factual understanding of the proceeding against him." Dusky v. United States, 362 U.S. 402 (1960) (per curiam). Counsel's response focused on her interaction with Baten-Calel. D.E. 51. Nothing in the record before this Court suggests there was any reason for counsel to look beyond her interaction with Baten-Calel.

Baten-Calel next complains that counsel failed to make sufficient inquiry to be able to argue mitigating circumstances in favor of a lighter sentence at sentencing. At sentencing, counsel argued for a lower sentence based in part on Baten-Calel's severe personal circumstances in Guatemala. To the extent Baten-Calel suggests that there were other facts that counsel should have discovered, he does not state what the facts were or how they would have made any difference at sentencing. His failure to state facts upon which his claim is based renders his claim conclusory. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. United States v. Woods, 870 F.2d 285, 288 n.3 (5th Cir. 1989); see also United States v. Jones, 614 F.2d 80 (5th Cir. 1980) (failure of movant to state specific facts, "is insufficient to state a constitutional claim").

8

### D. The PSR Miscalculated his Criminal History Points

Baten-Calel finally complains of his criminal history computation because the PSR does not reflect whether he was represented by counsel. One of Baten-Calel's scored criminal convictions in the PSR states that Probation was unable to determine whether he was represented by counsel. Baten-Calel had 7 criminal history points. The conviction at issue was for non-payment of a fine imposed in a previous criminal trespass case. The second case in which it was not clear whether Baten-Calel was represented by counsel did not score and did not affect his criminal history computation. D.E. 18, ¶¶ 23, 24.

Baten-Calel's claim of sentencing error may not be challenged in this proceeding. A district court's technical application of the sentencing guidelines is not cognizable on § 2255 review. United States v. Payne, 99 F.3d 1273, 1281-82 (5th Cir. 1996); United States v. Walker, 68 F.3d 931, 9344 (5th Cir. 1995). This claim fails.

### V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Baten-Calel has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A Certificate of Appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Baten-Calel is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Baten-Calel's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 42) is **DENIED**. He is also **DENIED** a Certificate of Appealability.

It is so **ORDERED**.

**SIGNED** on this 31st day of March, 2014.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE